Barbra R. Parlin, Esq.
Loren L. Forrest Jr., Esq. (*pro hac vice* pending)
Edward C. Frischling, Esq. (*pro hac vice* pending)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Tel.: (212) 513-3200
Fax: (212) 385-9010

*Attorneys for Defendant*
*CSX Transportation, Inc.*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | |
| NORTH CONNECTIONS | : | Case No.: <u>12-30629</u> |
| LOGISTICS, INC., | : | |
| | : | Judge: <u>KCF</u> |
| | : | |
| Debtor. | : | Chapter: <u>7</u> |
| | : | |
| NORTH CONNECTIONS | : | |
| LOGISTICS, INC., | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 12-01979-KCF |
| v. | : | |
| | : | |
| CSX TRANSPORTATION, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT CSX TRANSPORTATION, INC.'S
## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

## TABLE OF CONTENTS

Page

STATEMENT OF FACTS ...............................................................................................2

    The Parties ..................................................................................................................2

    The Agreement and NCL's Breach .............................................................................2

    NCL Agreed to Arbitrate Disputes ............................................................................4

    NCL Agreed to an Exclusive Forum of Judicial Action............................................5

ARGUMENT ...................................................................................................................5

I.    NCL'S LAD CLAIM IS SUBJECT TO  ARBITRATION UNDER THE
      AGREEMENT. ......................................................................................................5

    A.    Federal Policy Favors Arbitration...........................................................5

    B.    NCL's Claims are Subject to Arbitration ................................................7

    C.    Upon finding that NCL's Claims are Arbitrable, the Court Can and Should
          Dismiss NCL's Complaint........................................................................10

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS  TO STATE
      A DISCRIMINATION CLAIM UNDER THE LAD. ..................................................11

    A.    Standard for a Motion to Dismiss ...........................................................11

    B.    The Complaint Fails to Allege a Dicrimination Claim under the LAD...................13

        1.    There are no allegations of disparate treatment................................14

        2.    There are no allegations that give rise to an inference of discrimination.........16

III.    VENUE IS NOT PROPER IN THIS COURT. .................................................17

CONCLUSION.................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott v. Verizon Communications,*
    Civ. No. 11-0421, 2012 WL 1033415 (D.N.J. Mar. 27, 2012),................................17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................11, 12, 14, 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................11, 14, 15, 17

*Blair v. Scott Specialty Gases,*
    283 F.3d 595 (3d Cir. 2002)...........................................................................10

*Bratek v. TD Bank, N.A.,*
    Civ. No. 11-3049, 2012 WL 603299 (D.N.J. Feb. 22, 2012) ....................................13

*Caldwell v. KFC Corp.,*
    958 F. Supp. 962 (D.N.J. 1997) ...........................................................................6

*Caruso v. Ravenswood Developers, Inc.,*
    337 N.J. Super. 499, 767 A.2d 979 (N.J. Super. Ct. App. Div. 2001).......................7

*Carpenters Health and Welfare Fund of Phila. v. Kia Enters. Inc.,*
    Civ. No. 09–116, 2009 WL 2152276 (E.D. Pa. Jul. 15, 2009) ................................14

*Ctr. Jersey Freightliner, Inc. v. Freightliner Corp.,*
    987 F. Supp. 289 (D.N.J. 1997) ...........................................................................10

*Century Indem. Co. v. Certain Underwriters at Lloyd's,*
    584 F.3d 513 (3d Cir. 2009).............................................................................6

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,*
    709 F.2d 190 (3d Cir. 1983)...........................................................................18

*Davis v. City of Newark,*
    285 F. App'x. 899 (3d Cir. 2008) ....................................................................13

*Derbin v. Access Wealth Management, LLC,*
    Civ. No. 11–812, 2011 WL 4751992 (D.N.J. Oct. 7, 2011) ...............................6, 7, 9

*El-Sioufi v. St. Peter's Univ. Hosp.,*
    382 N.J. Super. 145, 887 A.2d 1170 (N.J. Super. Ct. App. Div. 2005)....................13

*EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.,*
    410 N.J. Super. 453, 982 A.2d 1194 (N.J. Super. Ct. App. Div. 2009)...........7, 8, 9

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009)...............................................................................12

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.,*
    168 N.J. 124, 773 A.2d 665 (2001)......................................................................9

*Great Western Mortg. Corp. v. Peacock,*
    110 F.3d 222 (3d Cir. 1997)...............................................................................11

*Halper v. Halper,*
    164 F.3d 830 (3d Cir. 1999)...............................................................................18

*Hays and Co. v. Merrill Lynch,*
    885 F.2d 1149 (3d Cir. 1989)...............................................................................7

*Heffley v. Acme Markets, Inc.,*
    Civ. No. 1:08-cv-3397, 2009 WL 1090660 (D.N.J. Apr. 20, 2009)....................17

*In re Axiant, LLC,*
    Civ. No. 09-14118, 2012 WL 5614588 (Bankr. D. Del. Nov. 15, 2012) ........18, 19

*In re Exide Technologies,*
    544 F.3d 196 (3d Cir. 2008)...............................................................................18

*In re McCrary & Dunlap Constr. Co., LLC,*
    256 B.R. 264 (Bankr. M.D. Tenn. 2000) ............................................................18

*In re Mintze,*
    434 F.3d 222 (3d Cir. 2006)...............................................................................6, 7

*In re Olympus Healthcare Group, Inc.,*
    352 B.R. 603 (Bankr. D. Del. 2006) .....................................................................6

*Jansen v. Salomon Smith Barney, Inc.,*
    342 N.J. Super. 254, 776 A.2d 816 (N.J. Super. Ct. App. Div. 2001)...................8

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.,*
    119 F.3d 1070 (3d Cir. 1997)............................................................................18

*Lauro Lines v. Chasser,*
    490 U.S. 495 (1989).........................................................................................18

*McCafferty v. Thermo Fisher Scientific,*
    Civ. No. 11-1146, 2011 WL 3443838 (D.N.J. 2011) .....................................16, 17

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973).........................................................................................13

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
   473 U.S. 614 (1985) ...........................................................................................................10

*Morando v. NetWrix Corp.*,
   Civ. No. 11–5075, 2012 WL 1440229 (D.N.J. Apr. 24, 2012) .................................8

*Mutual Ben. Life Ins. Co. v. Zimmerman*,
   783 F. Supp. 853 (D.N.J. 1992) .................................................................................7

*Newark Bay Cogeneration P'ship., LP v. ETS Power Group*,
   Civ. No. 11–2441, 2012 WL 4504475 (D.N.J. Sept. 28, 2012) ...............................9

*Phil Singer Assocs. v. Philips Oral Healthcare, Inc.*,
   Civ. No. 03-3578, 2003 WL 23208271 (D.N.J. Dec. 13, 2003)..............................10

*Singer v. Commodities Corp.*,
   292 N.J. Super. 391, 678 A.2d 1165 (N.J. Super. Ct. App. Div. 1996).....................9

*Trippe Mfg. Co. v. Niles Audio Corp.*,
   401 F.3d 529 (3d Cir. 2005) ......................................................................................7

*United Paperworks Int'l Union, AFL–CIO v. Misco, Inc.*,
   484 U.S. 29 (1987) ....................................................................................................6

*Wall Street Aubrey Golf, LLC v. Aubrey*,
   189 Fed. Appx. 82 (3d Cir. 2006) ...........................................................................18

*Wasserstein v. Kovatch*,
   261 N.J. Super. 277, 618 A.2d 886 (N.J. Super. Ct. App. Div. 1993).......................8

*Young v. Prudential Ins. Co. of America, Inc.*,
   297 N.J. Super. 605, 688 A.2d 1069 (N.J. Super. Ct. App. Div. 1997)......................9

## STATUTES

9 U.S.C. § 2.................................................................................................................5

11 U.S.C. § 101, *et seq.*...............................................................................................2

28 U.S.C. § 157(b) .............................................................................................18, 19

42 U.S.C. § 1981 ..................................................................................................13, 14

11 U.S.C. § 701, *et seq.*........................................................................................2, 6, 7

11 U.S.C. § 1101, *et seq.*......................................................................................2, 19

N.J.S.A. § 10:5-12(l)........................................................................................ *passim*

iv

## PROCEDURAL RULES

Fed. R. Bankr. P. 7012(b) ........................................................................................................1, 11

Fed. R. Civ. P. 12(b)(3)..................................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................................11, 12

Defendant CSX Transportation, Inc. ("CSXT") respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(3) and (6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), to dismiss the Complaint by debtor North Connections Logistics, Inc. ("NCL") because: (i) it alleges a dispute that is clearly subject to a binding and enforceable arbitration agreement between the parties; (ii) it fails to state a claim upon which relief can be granted; and (iii) venue is improper in this Court.

## Preliminary Statement

This litigation arises out of the pre-petition written agreement between NCL and CSXT, by which NCL agreed to provide timely and reliable transportation services to CSXT employees. NCL admits that it had a written contract to provide timely taxi services to CSXT, and that contract sets out clear metrics as to how NCL's on time performance would be measured. NCL also admits that it breached the parties' contract by failing to provide timely taxi services in accordance with the contract. Unable to avoid the impact of these clear admissions, NCL's complaint relies on conclusory allegations and implausible inferences of discrimination to justify its performance failures. These allegations do not come near, much less meet, the requirements for pleading a claim for discrimination under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12(l) (the "LAD").

That being said, this Court need not even reach the question of whether NCL has stated a claim upon which relief can be granted. As is evident from the face of the Complaint, the dispute at issue here falls squarely within the clear and unambiguous arbitration clause set forth in the parties' contract. Finally, the Complaint also should be dismissed because this action was brought in an improper venue.

**Statement of Facts**

**The Parties**

NCL, a taxi service company, is the debtor in the above captioned bankruptcy proceeding. Complaint ¶ 1, 8.[1]  On August 20, 2012, NCL filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code").   Complaint ¶ 1.  NCL's chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code on October 23, 2012.

Defendant CSXT is a Virginia corporation with its principal place of business in Florida. It is a leading supplier of rail-based freight transportation in North America.  Complaint ¶ 2.

**The Agreement and NCL's Breach**

On July 1, 2009, NCL and CSXT entered into that certain CSX Transportation System Agreement (the "Agreement"). Prior to that date, W&W Transportation ("W&W"), a predecessor company to NCL with the same minority ownership and management team, provided taxi services to CSXT.   Complaint ¶ 7.  Under the Agreement, NCL agreed to provide the taxi services that were previously provided by W&W to transport CSXT personnel.   Complaint ¶ 8. Specifically, the Agreement called for NCL to timely and punctually transport CSXT's railroad crews to and from locations as requested by CSXT.  Parlin Cert. Ex. 1 ¶ 9.

The need to have CSXT staff transported from one location to another in a timely, safe and efficient manner is of prime importance to CSXT and is a material and essential element of the Agreement.  Parlin Cert. Ex. 1, preamble, ¶ 9(D), (E). To that end, the Agreement delineates

---

[1] The fact discussion set forth above is based upon the allegations in the Complaint, the record of this bankruptcy case, the terms of the parties' Agreement, and a letter from Tom Flanley, CSXT Assistant Vice President of Crew Management, to Ron Jackson, President of NCL, dated February 22, 2012 (the "Feb. 22 letter").  The Agreement and the Feb. 22 letter are incorporated by reference in the Complaint.  For the Court's convenience, a copy of the Agreement and a copy of the letter is attached as Exhibit's 1 and 2 respectively to the Certification of Barbra R. Parlin ("Parlin Cert"), dated December 17, 2012, filed with this Memorandum of Law in further support of CSXT's motion to dismiss.

2

standards and metrics for measuring NCL's performance. Parlin Cert. Ex. 1 ¶ 9(A). As provided in the Agreement, "Need Time" is the time that CSXT required NCL to be at CSXT's desired pick up location. *Id.* "Requested Time" is the precise time that CSXT inputs the request for NCL services, either in CSXT's computer system or by direct request via telephone. "Lead Time" is the difference between Need Time and Requested Time. *Id.* "ASAP Calls" are calls that provide less than one-hour of lead time. *Id.* "Arrival Time" is the time that NCL's taxi arrives at the designated pick up location. *Id.* "Adjusted Need Time" is the Requested Time plus one hour, to accommodate for when less than one hour of Lead Time is provided. *Id.*

The Agreement further provides that "On-time Performance" occurs when: "(a) for non-ASAP calls, the difference between the Arrival Time and Need Time is less than 5 minutes; or for (b) ASAP calls, the difference between the Arrival Time and Adjusted Need Time is less than 5 minutes." *Id.* In other words, no matter the actual Requested Time, NCL would have at least one hour and five minutes to make the pick up and still be deemed "on time."

Under the Agreement, NCL materially breaches when, *inter alia*, it fails to maintain on-time performance of at least 90% during a one-month period for both ASAP and Non-ASAP calls. Parlin Cert. Ex. 1 ¶ 9(D). If CSXT deemed NCL's taxi services unsatisfactory, CSXT could terminate the Agreement, provided it gave NCL fourteen (14) days to cure the alleged breach. If the breach was not cured within 14 days, then CSXT could terminate the Agreement. Parlin Cert. Ex. 1 ¶ 19.

The Agreement does not limit the number of ASAP calls, nor does it require or even outline any procedure for CSXT to communicate in advance the locations where it anticipated an increased need for NCL's services, as the Complaint mistakenly suggests. Rather, the Agreement simply required CSXT to make reasonable efforts to afford NCL at least two hours'

lead time for calls.   And, as noted above, no matter the actual Need Time, the Agreement gave NCL at least an hour and five minutes to perform and still be deemed on time (Adjusted Need Time).

Despite the requirements of the Agreement, and even after a meeting on October 17, 2011 to discuss NCL's poor performance, NCL's on-time performance was "well below" the 90% on-time performance required in the Agreement.   Complaint ¶ 29 and Parlin Cert. Ex. 2, Tom Flanley, CSXT Assistant Vice President of Crew Management, Letter to Ron Jackson, President of NCL, dated February 22, 2012.   Even in its best month after October 2011, NCL's performance was only 82%.   *Id.*   "When crews are not on time, it can be very expensive" for CSXT.   *Id.*   Indeed, NCL admits that it failed to comply with its on-time obligations and, thus, that it breached its contractual on-time performance obligations to CSXT.   Complaint ¶ 38.   On February 22, 2012, CSXT advised NCL that it was failing to perform under the Agreement and, to protect the continuity of its operations, CSXT intended to engage an alternative vendor to supply taxi services.[2]   *Id.*   Subsequently, on July 9, 2012, CSXT advised NCL that it was providing notice of its intent to terminate the Agreement as a result of NCL's continuing failure to meet the 90% on-time standard in the Agreement, and then on August 13, 2012 advised NCL that it was in fact terminating the Agreement pursuant to its terms.   Complaint ¶ 32, 33.

**NCL Agreed to Arbitrate Disputes**

The Agreement contains detailed dispute resolution procedures.   In the event that a dispute could not be resolved by discussion among the parties, the Agreement specifically provides that any and all "controversies *arising out of* or connected with any default or *breach* so occurring shall be resolved by" binding arbitration.   Parlin Cert. Ex. 1 ¶ 22.   (emphasis added). Here, NCL specifically alleges that CSXT discriminated against NCL by CSXT withholding

---

[2] The Agreement nowhere requires CSXT to use NCL's services exclusively.

information from NCL regarding its Agreement so that it could "*manufacture a breach*" and use

that *breach* as a pretext to terminate its Agreement with NCL.  Complaint ¶ 38 (emphasis added).

### NCL Agreed to an Exclusive Forum of Judicial Action

In addition to its detailed dispute resolution procedures, the Agreement specifies the

forum in which judicial action would occur.  Specifically, it states that "The exclusive venue for

any judicial action arising from, or brought to enforce, this Agreement shall be a state or federal

court of competent jurisdiction located in Jacksonville, Florida."  Parlin Cert. Ex. 1 ¶ 23(C).

### Argument

### I.    NCL'S LAD CLAIM IS SUBJECT TO ARBITRATION UNDER THEAGREEMENT.

Stated simply, NCL's LAD claim must be dismissed because it agreed to binding

arbitration of "any and all controversies arising out of or connected with any default or breach so

occurring" under the Agreement.  Parlin Cert. Ex. 1 ¶ 22.  Federal law favors enforcement of

arbitration clauses, NCL's pre-petition agreement to arbitrate its claims against CSXT is

enforceable notwithstanding the pending bankruptcy case, and the dispute at issue here is clearly

within the scope of the arbitration agreement.

### A.    Federal Policy Favors Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides:

> If any suit or proceeding be brought in any of the courts of the United
> States upon any issue referable to arbitration under an agreement in
> writing for such arbitration, the court in which such suit is pending, upon
> being satisfied that the issue involved in such suit or proceeding is
> referable to arbitration under such an agreement, shall on application of
> one of the parties stay the trial of the action until such arbitration has
> been had in accordance with the terms of the agreement, providing the
> applicant for the stay is not in default in proceeding with such
> arbitration.

In *Gilmer v. Interstate/Johnson Lane Corp.*, the Supreme Court held that a party will be bound by its agreement to arbitrate unless "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." 500 U.S. 20, 26 (1991). Therefore, pursuant to the FAA, where the contract contains an arbitration clause, there is a presumption of arbitrability. *Derbin v. Access Wealth Management, LLC,* Civ. No. 11–812, 2011 WL 4751992 at *2-4 (D.N.J. Oct. 7, 2011). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability. *Id*; *see also Century Indem. Co. v. Certain Underwriters at Lloyd's,* 584 F.3d 513, 527 (3d Cir. 2009); *Caldwell v. KFC Corp.,* 958 F. Supp. 962, 973 (D.N.J. 1997). The Supreme Court also has explained that the reviewing court's role is confined to ascertaining whether the claim on its face is governed by the arbitration contract. *Derbin*, 2011 WL 4751992 at *3 (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960) and *United Paperworks Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36–37 (1987).

The foregoing policy applies notwithstanding that NCL is a debtor in bankruptcy and notwithstanding that the case has been converted to chapter 7. Bankruptcy Courts routinely dismiss or stay adversary proceedings in favor of arbitration. *See, e.g., In re Mintze,* 434 F.3d 222 (3d Cir. 2006) (holding that even in core bankruptcy proceedings, a Bankruptcy Court may not deny the enforcement of an arbitration provision unless the claims (1) derive exclusively from the provisions of the Bankruptcy Code and (2) the arbitration proceeding would conflict with the purposes of the Code) (citing *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1067 (5th Cir. 1997)); *see also In re Olympus Healthcare Grp., Inc.*, 352 B.R. 603 (Bankr. D. Del. 2006) (enforcing arbitration provision).

CSXT submits that there is no question that the Court should enforce an agreement to arbitrate when, as here, the claim is a non-core action[3] for damages under state law arising out of alleged pre-petition conduct that is asserted by or on behalf of the debtor's estate. *Mintze*, 434 F.3d at 231 (concluding that the Bankruptcy Court lacked the authority and discretion to deny enforcement of an arbitration provision because the debtor failed to raise any statutory claims that were created by the Bankruptcy Code).

NCL's pre-petition agreement to arbitrate likewise is enforceable against the Trustee appointed in its chapter 7 case. Indeed, bankruptcy trustees are bound by arbitration agreements to the same extent as the debtor would otherwise be. *See Hays and Co. v. Merrill Lynch*, 885 F.2d 1149 (3d Cir. 1989).

### B.    NCL's Claims are Subject to Arbitration

In determining whether to enforce an arbitration agreement, a court must engage in a two-step inquiry:   (1) does a valid agreement to arbitrate exist? and (2) does the particular dispute fall within the scope of the agreement? *Derbin*, 2011 WL 4751992 at *2-4; *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).   NCL nowhere disputes that a valid agreement to arbitrate exists.  Indeed, NCL's claim is premised upon a breach of the Agreement by CSXT and NCL relies on the Agreement.  In fact, NCL's Complaint, stripped to its essentials, is nothing more than a breach of contract claim dressed up as an LAD claim.  Accordingly, the Court simply must determine whether the dispute at issue falls within the scope of such agreement.  It does.

In examining whether certain claims fall within the ambit of an arbitration clause, a court must focus on the "factual allegations" in the Complaint rather than the legal causes of action

---

[3] At ¶ 3, the Complaint alleges in conclusory fashion that this is a "core" action.  However, the other factual allegations in the Complaint make it clear that the claim at issue is not core. *See below* at Point III.

asserted. *Mut. Ben. Life Ins. Co. v. Zimmerman,* 783 F. Supp. 853, 869 (D.N.J. 1992); *Caruso v. Ravenswood Developers, Inc.,* 337 N.J. Super. 499, 507, 767 A.2d 979, 984 (N.J. Super. Ct. App. Div. 2001); *EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.,* 410 N.J. Super. 453, 472– 73, 982 A.2d 1194, 1205-07 (N.J. Super. Ct. App. Div. 2009). If the factual allegations touch matters covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them. *EPIX,* 410 N.J. Super. at 473, 982 A.2d at 1206; *Jansen v. Salomon Smith Barney, Inc.,* 342 N.J. Super. 254, 258, 776 A.2d 816, 819 (N.J. Super. Ct. App. Div. 2001) (ordering arbitration because even though "plaintiffs couch their claim as an independent tort action, the complaint essentially sounds in contract"); *Wasserstein v. Kovatch,* 261 N.J.Super. 277, 286, 618 A.2d 886, 891 (N.J. Super. Ct. App. Div. 1993) ("Notwithstanding the language of the Wassersteins' complaint sounding in tort, the complaint essentially arises in contract rather than tort and is governed by the contract.").

NCL's Complaint clearly touches factual matters covered by the parties' Agreement and, therefore, NCL's claim must be arbitrated, regardless of the legal label attached to it. *EPIX,* 410 N.J. Super. at 473, 982 A.2d at 1206. For example, the Complaint alleges that CSXT discriminated against it by withholding information from NCL regarding its performance under the Agreement so that CSXT could "*manufacture a breach*" and use that *breach* as a pretext to terminate its Agreement with NCL. Complaint ¶ 38. Further, in paragraph 23, NCL alleges that CSXT was violating the Agreement by failing to provide NCL with the lead time specified in the Agreement. *Id.* ¶ 23. Similarly, paragraphs 25-28 of the Complaint allege that CSXT was not complying with the terms and conditions of the Agreement between the parties. *Id.* ¶ 25-28. Lastly, in paragraphs 28-33, NCL alleges CSXT's violations of the Agreement between the parties. *Id.* ¶ 28-33. On these facts, there can be no question that both the factual allegations and

8

the legal claim in NCL's Complaint are based on the parties' performance under the Agreement and thus fall squarely within the arbitration clause of the Agreement.

It should be noted that courts will dismiss an action in favor of arbitration even when the claim alleges a civil rights violation such as NCL's LAD claim. The District Court's recent decision in *Morando v. NetWrix Corp.*, Civ. No. 11–5075, 2012 WL 1440229 (D.N.J. Apr. 24, 2012) is instructive here. In that case, the plaintiff employee brought an action alleging claims under the LAD, the statute at issue here. The defendant employer moved to dismiss on the grounds that the dispute was subject to arbitration under the parties' agreement, which, like the agreement at issue here, required arbitration of all disputes "arising out of" a breach of the parties' contract. The court agreed and dismissed the claim, finding that the claims were well within the scope of the arbitration agreement between the parties. *See also Derbin v. Access* 2011 WL 4751992 at *2-4 (D.N.J. 2011) (New Jersey district court required employee to arbitrate his LAD claims where the arbitration clause contained broad "arising out of" language); *Singer v. Commodities Corp.*, 292 N.J. Super. 391, 405–07, 678 A.2d 1165, 1772-73 (N.J. Super. Ct. App. Div. 1996) (arbitration provision stating that employee agreed to arbitrate "any dispute" with employer was sufficiently broad to encompass plaintiff's CEPA claim); *Young v. Prudential Ins. Co. of America, Inc.,* 297 N.J. Super. 605, 613–14, 688 A.2d 1069, 1074-75 (N.J. Super. Ct. App. Div. 1997) (employee's CEPA and LAD claims were subject to arbitration because he agreed to arbitrate "any dispute, claim or controversy" with his employer).

As noted in *Morando* and *Derbin*, in determining whether an employee has waived the right to proceed with an LAD claim in a judicial forum, courts set a higher bar, due in part, to the inherently unequal bargaining power between employers and employees. *See Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665 (2001) (finding that the

waiver of statutory rights must be explicit). However, such considerations are irrelevant in this case, where the dispute involves a long standing commercial contract between two sophisticated business entities on the same plane. *Garfinkel's* articulated limits to broadly-worded arbitration clauses do not apply outside "the special area" of a "plaintiff's enforcement of statutory employment claims." *EPIX*, 410 N.J. Super. at 476-477, 982 A.2d at 1208. It is only where the parties to the suit possess uneven bargaining power -- *e.g.*, customers of the defendant or employees of the defendant -- that the higher standard for finding a waiver is applied. *Newark Bay Cogeneration P'ship., LP v. ETS Power Group*, Civ. No. 11–2441, 2012 WL 4504475 at *10, n. 2 (D.N.J. Sept. 28, 2012). Under the circumstances of this case, this Court should find that NCL's Complaint alleges a claim within the scope of the arbitration clause in the Agreement and thus must be arbitrated.

**C.    Upon finding that NCL's Claims are Arbitrable, the Court Can and Should Dismiss NCL's Complaint**

When a court concludes that a matter is subject to a mandatory arbitration agreement, as is the claim at issue here, the court may either stay the action pending arbitration or dismiss the suit. *Phil Singer Associates v. Philips Oral Healthcare, Inc.*, Civ. No. 03-3578, 2003 WL 23208271 at *3-4 (D.N.J. Dec. 13, 2003). Courts typically will order a stay where the complaint alleges several causes of action, some of which are not subject to arbitration. *See, e.g., Ctrl. Jersey Freightliner, Inc. v. Freightliner Corp.*, 987 F. Supp. 289, 300 (D.N.J. 1997). Where all of the claims are arbitrable, as is the case here, courts will dismiss the complaint in favor of arbitration. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 602, n. 1 (3d Cir. 2002).

Requiring NCL to arbitrate its claims, as it had agreed, merely transfers NCL's dispute to another forum. It does not eliminate the substantive rights afforded by the statute. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Moreover, in the

instant case, the arbitrator is required not only to follow the terms and provisions of the Agreement but also the "law applicable to the dispute." Parlin Cert. Ex. 1 ¶ 22 (B) (2). Finally, the Arbitrator also has broad powers to "grant all appropriate legal and equitable relief (both by way of interim relief and as part of its final award) other than punitive damages, as may be granted by any court of the U.S." including, but not limited to, "declaratory relief, injunctive relief including specific performance and damages."[4] *Id.*

NCL is a commercial entity that entered into a clear and unambiguous agreement to arbitrate its disputes arising out of that Agreement with CSXT. This Court can and should require the Trustee, standing in NCL's shoes, to abide by the terms of the Agreement to arbitrate.

## II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A DISCRIMINATION CLAIM UNDER THE LAD.

Federal Rule of Civil Procedure 12(b)(6), made applicable to this case by Fed. R. Bankr. P. 7012(b), authorizes a court to grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. If this Court does not dismiss the Complaint in favor of arbitration, it nevertheless should dismiss it for failure to state a claim under the LAD.

### A.    Standard for a Motion to Dismiss

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Although a court still must generally accept allegations in the complaint as true, it is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* at 678-9 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (while a complaint "does not need detailed factual allegations, a plaintiff's obligation

---

[4]    The unavailability of punitive damages is not relevant and should not be considered in deciding the forum in which the complaint will be heard. *See Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222, 232 (3d Cir. 1997).

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

When assessing the sufficiency of a civil complaint, a court must distinguish between factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. A complaint must be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570.). This plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, even if doubtful in fact. *Id.*

*Iqbal* was a case involving discrimination claims. In that case, the plaintiff alleged that the federal defendants knew of or condoned the allegedly unconstitutional actions taken against him, but the Supreme Court found that these allegations were legal conclusions and thus would not assume them to be true. 556 U.S. at 662. The plaintiff also had alleged that thousands of Muslim men were arrested after September 11 and placed in highly restrictive conditions of confinement, but the Supreme Court found that these allegations -- while consistent with the plaintiff's claim of illegal discriminatory motives -- were more plausibly explained by the defendants' legitimate interest in detaining those connected with the September 11 attacks. *Id.* Because there was an obvious alternative explanation for the defendants' actions, *id.* at 681-83, the Supreme Court found the plaintiff had failed to allege sufficient facts to "'[nudge] [his] claims' of invidious discrimination 'across the line from conceivable to plausible.'" *Id.*

The Supreme Court has made it clear that a plaintiff cannot rely on legal conclusions or implausible inferences and hope to survive a motion to dismiss. Measured against this standard, the Complaint must be dismissed.

**B.      The Complaint Fails to Allege a Discrimination Claim Under the LAD.**

The Complaint alleges one claim of racial discrimination under § 10:5-12(l) of the LAD. Claims under this section are analogous to claims under 42 U.S.C. § 1981 ("§ 1981"). Both § 1981 claims and claims under the LAD are subject to the *McDonnell Douglas* burden shifting test. *See, e.g., Lowe v. Medco Health Solutions of Willingboro, LLC.*, Civ. No. 10-4823, 2012 WL 1495440 (D.N.J. Apr. 27, 2012) (applying the burden shifting *McDonnell Douglas* framework to § 1981 and LAD claims); *Davis v. City of Newark*, 285 F. App'x 899, 903 (3d Cir. 2008).

The *McDonnell Douglas* or burden-shifting model requires the following three part analysis:

> (1) the plaintiff must come forward with sufficient evidence to constitute a *prima facie* case of discrimination; (2) the defendant then must show a legitimate non-discriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.

*El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 166, 887 A.2d 1170, 1182 (N.J. Super. Ct. App. Div. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Courts have held that where the plaintiff fails to allege any direct evidence of discrimination, the plaintiff must allege facts demonstrating that similarly situated persons who are not members of a protected class were treated more favorably ("disparate treatment") or actions giving rise to an inference of discrimination to state a prima facie case under the LAD as well as under its federal analogue, § 1981. *Lowe*, 2012 WL 1495440 at *7-8; *Bratek v. TD Bank, N.A.*, Civ. No. 11-3049

RBK/KMW, 2012 WL 603299 at *6 (D.N.J. Feb. 22, 2012).  Here, NCL has failed to allege any

facts setting forth direct evidence of discrimination.  Therefore, to state a prima facie case, the

Complaint must allege facts showing disparate treatment or facts giving rise to an inference of

discrimination.  The Complaint does not satisfy either method of stating a prima facie claim

under LAD, and thus its claim must be dismissed.

### 1.       There are no allegations of disparate treatment

As noted, to establish disparate treatment, the Complaint would have to allege facts

showing that CSXT treated similarly situated persons that are not members of a protected class

more favorably than it treated NCL.  It does not even attempt to do so.

*Carpenters Health and Welfare Fund of Phila. v. Kia Enters. Inc.,* is instructive here.  In

a counterclaim, defendant Kia Enterprises, a minority owned business, sought damages against

the plaintiff/Union under § 1981, alleging that the Union acted in "'furtherance of and pursuant to

their long-standing pattern and practice of discriminating and retaliating against Minority

Business Enterprises and minority members' of the [union], particularly African-American

businesses."  Civ. No. 09–116, 2009 WL 2152276 at *1-4 (E.D. Pa. Jul. 15, 2009).  Kia further

alleged that the Union did not pressure or treat non-minority owned businesses that owed the

union money in the same manner as it treated minority businesses, and that the union

discriminated against Kia and another minority-owned company by demanding to review all

those companies' books and records, including those that had no relation to work covered by the

collective bargaining agreement, but did not make similar demands of non-minority-owned

businesses. *Id.*

On the Union's motion to dismiss, the court found that Kia did not allege sufficient facts

to make a prima-facie case of discrimination.  Among other things, allegations that the union had

a "longstanding pattern and practice" of discriminating against minorities and minority-owned

14

businesses were legal conclusions not entitled to any weight under *Iqbal* and *Twombly*. *Id.* at \*3. Moreover, the *Kia* court found that Kia's claims regarding the union's collection actions were consistent with a lawful attempt by the union to collect unpaid union obligations that they were owed. Accordingly, the *Kia* court found that "[b]y themselves, these allegations are 'not only compatible with, but more likely explained by,'" lawful behavior and therefore cannot plausibly suggest actionable wrongdoing. *Id.* at \*3 (citing *Iqbal,* 566 U.S. at 678.). In dismissing Kia's amended counterclaim, the court thus held that Kia had failed to plead sufficient additional facts to "nudge" its allegations of discrimination across the line from conceivable to plausible and that Kia had failed to offer specific facts in support of the union's alleged disparate treatment of minority and non-minority businesses. *Id.* at \*3.

Kia only underscores NCL's failure to plead sufficient facts to make a claim under 10:5-12(l) of the LAD. Indeed, the Complaint at issue fails to allege *any* facts indicating that similarly situated non-minority owned businesses are or were treated more favorably than NCL by CSXT. Paragraph 38 of the Complaint merely alleges that:

> CSXT terminated the Agreement and refused to do business with NCL on account of the race, creed, color, national origin, or ancestry of the owners, officers, employees, agents, or business associates of NCL in violation of N.J.S.A. § 10:5-12(1). CSXT purposely provided NCL with less than two hours' lead time and withheld information about instances where it expected increased demand so that it could manufacture a breach and use it as a pretext to terminate the Agreement with NCL.

The foregoing are nothing more than legal conclusions, which under *Twombly* and *Iqbal* cannot be taken as true.

CSXT's decision to terminate the Agreement as a result of NCL's material breach of the on-time performance requirements is not only compatible with, but more likely explained by, lawful behavior -- a desire to enforce its rights under and obtain the benefit of its Agreement --

so cannot plausibly suggest actionable wrongdoing. For this reason, and because the Complaint fails to allege any specific facts identifying particular instances of disparate treatment, the Complaint fails to establish a prima facie case under this prong of the burden shifting analysis.

**2.    There are no allegations that give rise to an inference of discrimination**

The Complaint likewise does not demonstrate facts giving rise to an inference of discrimination. NCL's Complaint alleges that CSXT employee John Gaylord ("Gaylord") would "roll his eyes or make some other gesture indicating dissatisfaction" when he encountered NCL's minority drivers. Complaint ¶ 21. NCL's Complaint alleges that Gaylord, would "derogatorily make note of the fact that NCL utilized primarily minority drivers." *Id.* Similarly, NCL's Complaint alleges that NCL "began *hearing* rumors" that "Mr. Gaylord was out to get them (NCL) and that NCL would not be around much longer." Complaint ¶ 24. (emphasis added). NCL's Complaint also alleges that "a member of CSXT management team advised that he could not get into the details, but *suggested* that Mr. Gaylord's actions were racially motivated." Complaint ¶ 26. (emphasis added). Simply stated, such vague allegations, made without any specificity whatsoever, are insufficient to state a prima facie case of discrimination under the LAD. *McCafferty v. Thermo Fisher Scientific*, Civ. No. 11-1146, 2011 WL 3443838 at *4 (D.N.J. Aug. 5, 2011). Indeed, NCL's Complaint fails to allege *any* specifics as to *any* comments Mr. Gaylord or any other CSXT employee or management official purportedly made.

In *McCafferty*, the plaintiff's complaint alleged that defendant was liable for harassment and retaliation under the LAD for false and negative statements, but failed to detail what the person allegedly said, when he said it, or how the plaintiff came to know of the statements. On these facts, the court found that the plaintiff's complaint recited "mere legal conclusions" and that, "without specifics," the court cannot determine if, after terminating plaintiff, the defendant performed any act that was either harassing and/or retaliatory. *Id.* at *4. Under the

16

circumstances, the court dismissed the plaintiff's LAD claims for failure to set forth sufficient direct or inferential allegations demonstrating the material elements of such a claim.

Similarly, in *Abbott v. Verizon Communications*, Civ. No. 11-0421, 2012 WL 1033415 at *2-4 (D.N.J. Mar. 27, 2012), the District Court of New Jersey dismissed a complaint alleging violation of the LAD because it failed to allege any facts from which the Court could infer that Verizon had engaged in culpable conduct. In *Verizon*, the court noted that "key allegations are absent" from the plaintiff's complaint. Among other things, the *Abbott* plaintiff had alleged that Verizon violated plaintiff's right to protection from workplace violence, discrimination and retaliation by ignoring written complaints from the plaintiff, without identifying the substance of the complaints. The plaintiff's allegations as to the circumstances of her termination were also not clear or specific. Given the vague assertions and a complaint that included only general references to workplace hostility, disparate treatment, etc., without identifying any precise conduct, the court found the plaintiff's "threadbare recitals cannot withstand a motion to dismiss."

Like the complaints in *McCafferty* and *Abbott*, NCL's Complaint does not establish a right to relief that rises above mere speculation. *See Twombly,* 550 U.S. at 555. At best, the Complaint contains vague, non-specific allegations or the type of sweeping legal conclusions that cannot substitute for specific facts demonstrating an inference of discrimination. *Heffley v. Acme Markets, Inc.,* Civ. No. 1:08-cv-3397, 2009 WL 1090660 at *2 (D.N.J. Apr. 20, 2009). Under the circumstances, because the Complaint fails to allege a prima facie case of discrimination under the LAD, it must be dismissed.

## III.   <u>VENUE IS NOT PROPER IN THIS COURT.</u>

As with its curious omission of any mention of the arbitration clause in the discussion of the Agreement, the Complaint fails to notify the Court that the Agreement contains an exclusive

forum selection clause. Specifically, the parties agreed that "the exclusive venue for any judicial action *arising from* or brought to enforce, this Agreement shall be a state or federal court of competent jurisdiction located in Jacksonville, Florida." Parlin Cert. Ex. 1 ¶ 23(C) (emphasis added). For the reasons stated repeatedly above, this action arises from the Agreement. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (opining that scope of exclusive forum selection clause containing the phrase "any dispute arising ... in relation [to the parties' agreement]" extended to disputes having a logical or causal connection to the parties' agreement).

It is well settled that forum selection clauses are entitled to great weight and are presumptively valid. *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82 (3d Cir. 2006). It also is well settled that forum selection clauses are enforceable in non-core bankruptcy proceedings. *See, e.g., In re Exide Technologies*, 544 F.3d 196, 206 (3d Cir. 2008) (forum selection clause would be enforced if the claims are determined to be non-core). The strong policy favoring centralization of bankruptcy proceedings in bankruptcy courts does not justify the non-enforcement of a forum selection clause in a non-core proceeding. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 201–02 (3d Cir. 1983), *overruled in part on other grounds* by *Lauro Lines  v. Chasser*, 490 U.S. 495 (1989); *see also In re McCrary & Dunlap Constr. Co., LLC*, 256 B.R. 264, 267 (Bankr. M.D. Tenn. 2000). As such, the dispositive issue to be determined here is whether the cause of action alleged in the Complaint is "core," as the Complaint conclusorily alleges (*see* Parlin Cert. Ex. 1 ¶ 3), or not core. *In re Axiant, LLC*, Civ. No. 09-14118, 2012 WL 5614588 at *3 (Bankr. D. Del. Nov. 15, 2012). There is no question that the claim at issue here, brought by the estate to recover damages for an alleged prepetition violation of state law, is not core.

Courts determine whether a proceeding is core by consulting two sources. *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). First, a court must consult section 157(b) of title 28 which "provides an illustrative list of proceedings that may be considered 'core.'" *Id.* Second, the court must apply the Third Circuit's test to determine whether the proceeding "invokes a substantive right provided by title 11" or is "a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Id.* (citing *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996)).

A debtor's pre-petition state law discrimination claim clearly is not among those listed in 28 U.S.C. § 157(b), nor is it a substantive right under title 11. Indeed, NCL's LAD claim is premised upon an alleged pre-petition violation of state law, and thus exists outside of the context of and is independent from this bankruptcy proceeding. As such, it is not core. *Axiant,* 2012 WL 5614588 at *4 (applying forum selection clause for state law causes of action because plaintiff's claims were not "capable of arising only in the context of a bankruptcy case").

Accordingly, this Court also can and should enforce the forum selection clause in the Complaint, and enter an order dismissing NCL's complaint because it was filed in an improper venue.

19

## Conclusion

For all of the reasons set forth above, CSXT respectfully requests that the Court enter an order:

(a) dismissing the Complaint in its entirety with prejudice;

(b) awarding CSXT its attorneys fees and costs associated with this matter;

(c) granting to CSXT such other and further relief as this Court deems just and proper.

Dated: New York, New York
       December 17, 2012

HOLLAND & KNIGHT LLP

By:  /s/ Barbra P. Parlin
     Barbra R. Parlin, Esq.
     Loren L. Forrest Jr., Esq. (*pro hac vice* pending)
     Edward C. Frischling, Esq. (*pro hac vice* pending)
     31 West 52nd Street
     New York, NY  10019
     Tel.: (212) 513-3200
     Fax: (212) 385-9010

     *Attorneys for Defendant*
     *CSX Transportation, Inc.*