# LAW OFFICE OF PHILIP B. SEATON

ONE GREENTREE CENTRE, SUITE 201
10000 LINCOLN DRIVE EAST
MARLTON, NJ 08053
OFFICE 856-988-5516 • CELL 856-625-5678 • FAX 856-596-8359
PBSEATON@SEATON-LAW.COM

March 1, 2013

**VIA ECF**

Honorable Kathryn C. Ferguson, U.S.B.J.
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    **North Connections Logistics, Inc. v. CSX Transportation, Inc.,
Adv. Pro. No. 12-1979**

Dear Judge Ferguson:

    Your Honor is scheduled to hear Defendant CSX Transportation, Inc.'s ("CSX") motion to dismiss next Tuesday, March 5, 2013. We represent Plaintiff North Connections Logistics, Inc. ("NCL") and write to address the significance the Florida Supreme Court's recent opinion in *Jackson v. The Shakespeare Foundation, Inc.*, ____ So.3d _____ (Fla. Jan. 31, 2013), has on the arbitration issue. *Jackson* was decided the day before NCL filed its opposition brief on February 1, 2013, and was not immediately available to us for inclusion in our brief. CSX has cited the case extensively in its reply, and given the significance of the case, we respectfully ask that NCL be heard on it as well.

    CSX takes the position that *Jackson* is dispositive and demonstrates that NCL's LAD claim falls within the scope of the arbitration cause. But CSX is comparing apples to oranges. As the U.S. Supreme Court has reiterated time and time again, it is the terms of the parties' contract that determines the scope of arbitration. *See, e.g., EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Volt Info. Sciences v. Stanford University*, 489 U.S. 468, 478 (1989). Thus, "[d]rawing analogy to other cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue." *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997).

    *Jackson* involved an arbitration clause that is significantly broader than the arbitration clause involved here. In *Jackson*, the parties entered into a contract for the sale of land. The contract included a broad arbitration clause that required arbitration of "[a]ll controversies, claims, and other matters in question *arising out of or relating to* this transaction or this Contract or its breach." *Id.* at *4 (emphasis added).

    The buyer sued the seller for fraud, alleging the seller failed to disclose the existence of wetlands on the property. The seller moved to compel arbitration.

In determining whether the fraud claim fell within the scope of the arbitration clause, the Florida Supreme Court reaffirmed *Seifert* and noted that there are *broad* and there are *narrow* arbitration clauses.

A clause requiring arbitration of only claims "arising out of" a contract, the Court said, is narrow in scope. "This type of provision limits arbitration to those claims that have a direct relationship to a contract's terms and provisions." *Id.* at *10.

By contrast, an arbitration clause requiring arbitration of claims "arising out of *or relating to*" a contract is broad in scope. "The addition of the words 'relating to' broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract—regardless of whether the claim is founded in tort or contract law." *Id.* The Court went on to explain:

> A "significant relationship" between a claim and an arbitration provision does not necessarily exist merely because the parties in the dispute have a contractual relationship. Rather, a significant relationship is described to exist between an arbitration provision and a claim if there is a "contractual nexus" between the claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship. In contrast, a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public.

*Id.* at 10-11.

The parties in *Jackson* agreed to arbitrate all claims *arising out of or relating to* either the transaction, the contract, or its breach. Thus, the Florida Supreme Court concluded the fraud claim was subject to the contract's broad arbitration clause because the fraud claim was a claim *relating to* the transaction and the contract. Proof of the contract was in fact needed to prove the fraud claim. "[T]he reliance element of the claim emanates from the transaction from which the contract arose, and the damages element of the claim arises from the execution and existence of the contract itself." *Id.* at *15.

By contrast, the arbitration clause in the Agreement between NCL and CSX is much narrower. They did not agree to arbitrate claims *related to* agreement. Instead, they limited the scope of the arbitration clause to claims "arising out of or connected with any default or breach" of their Agreement. These are words of limitation, not inclusion. *Cf. Washington v. CentraState Healthcare Systems, Inc.*, 2011 WL 1402765 (D.N.J. 2011) (Judge Thompson).

The Agreement brought the parties together and created the relationship between them, but that does not mean all claims that exist between them are by necessity claims that "aris[e]

2

out of or connected with any default or breach" of their Agreement.  *See, e.g., id.*  NCL does not allege and does not need to prove CSX breached the Agreement in order to sustain its LAD claim.  All NCL needs to show to prove its LAD claim is that CSX "refuse[d] to . . . contract with . . . or otherwise do business with [NCL] on the basis of race, creed, color, national origin, ancestry."  N.J.S.A. § 10:5-12(l).

Thus, unlike *Jackson* where reference to and existence of the contract was necessary to make out the plaintiff's fraud claim, NCL's LAD claim does not rise or fall or is otherwise dependent upon the Agreement.  The duty not to discriminate that CSX is alleged to have breached is one established by New Jersey statutory law,  not the Agreement.

That there is no contractual nexus between the Agreement and LAD claim is established by the fact that, even if CSX complied with every part of the Agreement, NCL would still have a LAD claim against CSX if its decision to terminate the Agreement and cease doing business with NCL was on account of race.  NCL's LAD claim, therefore, is not a claim  "arising out of or connected with any default or breach" of their Agreement.

Indeed, although not cited by CSX, the New Jersey Supreme Court held in *Garfinkel v. Morristown Obstetrics*, 168 N.J. 124 (2001), that a clause requiring arbitration of "any controversy arising out of, or relating to, this Agreement or the breach thereof" was not broad enough to encompass statutory LAD claims.  The Court noted that "a party's waiver of statutory rights 'must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'"  *Id.* at 132.  To that end, the Court held that the language of the arbitration clause was drawn too narrowly to be interpreted to cover statutory LAD claims, stating:

> The clause states that "any controversy or claim" that arises from the agreement or its breach shall be settled by arbitration.  That language suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself.  Moreover, the language does not mention, either expressly or by general reference, statutory claims redressable by the LAD.
>
> . . .
>
> To reiterate, the policies that support the LAD and the rights it confers on aggrieved employees are essential to eradicating discrimination in the workplace.  The Court will not assume that employees intend to waive those rights unless their agreements so provide in unambiguous terms.  That said, we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights.  To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination.

*Id.* at 134-35.

3

      The arbitration clause in the parties' Agreement ("arising out of or connected with any default or breach" of the Agreement) is very similar to the arbitration clause in *Garfinkel* ("any controversy arising out of, or relating to, this Agreement or the breach thereof").  If the language in *Garfinkel* was not sufficiently broad enough to encompass statutory LAD claims, then the language in the parties' Agreement likewise does not cover LAD claims.

      That CSX, meanwhile, as part of its anticipated defense to the LAD claim, intends to show that its termination of the Agreement was because of NCL's alleged unsatisfactory performance and not because of race, does not turn NCL's non-arbitrable LAD claim into an arbitrable one.  CSX drafted the Agreement.  It chose Florida law to govern the Agreement.  And *Seifert* was the law of Florida when the Agreement was executed.  If CSX wanted to arbitrate all claims, all it had to do was provide in the Agreement that "any and all" claims, or as Judge Thompson in *Washington* suggested, "all claims arising from the *relationship*, not merely from the *agreement*," shall be arbitrated.  CSX did not do that, and it cannot now be heard to complain that NCL is giving too narrow of an interpretation to the clause.

      We look forward to arguing the motion before Your Honor next Tuesday.  Thank you.

      Respectfully submitted,

      */s/ Philip B. Seaton*

      PHILIP B. SEATON

cc:    Barbra R. Parlin, Esquire (Via ECF)